NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRAVELODGE HOTELS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DURGA, LLC et al., <br><br> Defendants. | Civil Action No.: 15-8412 <br><br> **OPINION** |

**CECCHI, District Judge.**

## I.   INTRODUCTION

This matter comes before the Court by way of Plaintiff Travelodge Hotels, Inc.'s ("Plaintiff") motion for partial summary judgment as to Counts Two, Four, and Six of its Complaint. ECF No. 99. Defendants Durga, LLC ("Durga") and Sasikala Vemulapalli ("Sasikala") (collectively, "Defendants") opposed Plaintiff's motion for summary judgment (ECF No. 112), and Plaintiff replied (ECF No. 113). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Plaintiff's motion (ECF No. 99) is denied.

## II.  BACKGROUND[1]

This dispute arises out of Defendants' default of a franchise agreement among the parties, and, as a result of this default, Plaintiff's attempts to collect outstanding debts and damages from Defendants. Plaintiff is a corporation organized in Delaware with its principal place of business in

---

[1] Background facts are taken from the parties' statements of material fact, pursuant to Local Civil Rule 56.1. *See* ECF Nos. 99-4 ("Pl. SMF"), 112-2 ("Def. SMF").

New Jersey, which provides customers access to a "guest lodging facility" franchise network. Pl. SMF ¶¶ 1, 4. It is also a member brand of the Wyndham Hotel Group. *See generally* ECF No. 1. Plaintiff's franchise system is comprised of federally-registered trade names, service marks, logos, and derivations thereof, as well as a proprietary reservation platform. Pl. SMF at ¶ 5. Plaintiff neither owns nor operates any hotels. *Id.* Durga is a limited liability company organized in Michigan, with its principal place of business in Ohio. Def. SMF ¶ 2. Sasikala is the sole member of Durga. *Id.* at ¶ 3. Sasikala's husband, Kumar Vemulapalli ("Kumar"), is Durga's corporate representative. Pl. SMF at ¶ 7.

On or about October 23, 2013, Plaintiff and Durga entered into a franchise agreement whereby Durga would operate a 129-room Travelodge hotel facility in Sharonville, Ohio. Pl. SMF at ¶ 6. Pursuant to the franchise agreement, Durga was required to operate the Travelodge facility for a period of 15 years. *Id.* at ¶ 8; ECF No. 99-3 ("Mallet Aff.") Ex. A § 5. The franchise agreement required that Durga make certain payments to Plaintiff for royalties, system assessments, taxes, interest, and other fees (collectively, "recurring fees"), as well as interest on fees or debts that were past due. Pl. SMF at ¶ 9; Mallet Aff. Ex. A §§ 7, 7.3, 18.4, Schedule C. Moreover, the franchise agreement provided Plaintiff the opportunity to terminate the agreement before the end of the 15-year term in two circumstances: 1) if Durga discontinued operating the facility as a Travelodge hotel; and/or 2) if Durga lost possession or the right to possess the facility. Pl. SMF at ¶ 20; Mallet Aff. Ex. A § 11.2. In the event that the franchise agreement was terminated under one of these two circumstances, section 12.1 of the agreement stated that Durga would pay Plaintiff liquidated damages. Pl. SMF at ¶ 21; Mallet Aff. Ex. A § 12.1. Moreover, early termination also made Durga responsible for reimbursing Plaintiff for any outstanding recurring fees and associated costs. Pl. SMF at ¶¶ 32–33. Finally, as part of the franchise agreement, Sasikala signed a guaranty, making

her, upon a default of the franchise agreement, liable for money Durga owed to Plaintiff. Pl. SMF at ¶ 30.

In a November 4, 2014 letter, Plaintiff acknowledged that Durga defaulted on the franchise agreement by ceasing to operate the hotel as a Travelodge facility, and informed Durga that, due to the default, it was terminating their agreement early. Pl. SMF at ¶ 32; Mallet Aff. Ex. C. The letter also notified Durga that it was required to pay Plaintiff liquidated damages and all outstanding recurring fees and costs, pursuant to the terms of the franchise agreement. Pl. SMF at ¶ 32. To date, Defendants have not made any payments to Plaintiff, including for liquidated damages or the outstanding recurring fees. Pl. SMF at ¶ 33. As a result, Plaintiff now seeks to recover $493,898.97, inclusive of the outstanding recurring fees, liquidated damages, interest, and attorneys' fees and costs, for Defendants' failure to abide by the franchise agreement. Pl. SMF at ¶ 44.

On December 3, 2015, Plaintiff filed this action seeking damages for breach of contract (Counts One, Two, Three, Four, and Six) and unjust enrichment (Count Five). ECF No. 1. Plaintiff then moved for default on February 15, 2016 (ECF No. 6), which, with the consent of the parties, was vacated on March 11, 2016 (ECF No. 9). After Defendants filed an answer (ECF No. 11) and the parties began discovery, the Court entered default for a second time on May 23, 2017 (ECF No. 26), and subsequently granted final judgment in the amount of $253,946.78 in favor of Plaintiff on October 11, 2017 (ECF No. 28). Upon a motion by Defendants filed on March 24, 2018 (ECF No.31), the Court, after balancing the relevant factors under Federal Rule of Civil Procedure 60(b), set aside the previously entered final judgment and vacated default (ECF Nos. 34, 35). The parties then engaged in a settlement conference and continued to conduct discovery. ECF No. 44. However, after Defendants failed to comply with orders from the Court to produce initial

disclosures, to complete discovery requests, or to appear before the presiding magistrate judge, Plaintiff moved for default for a third time on June 26, 2019. ECF Nos. 49–51. With no response from Defendants, the Court entered final judgment in the total amount of $341,168.39 on November 25, 2019 (ECF No. 55), but later vacated the judgment upon a motion by Defendants to, in part, allow Defendants to retain new counsel (ECF No. 59, 60). Thereafter, the Court ordered the parties to attend mediation, which was ultimately unsuccessful. ECF No. 114. Presently before the Court is Plaintiff's motion for partial summary judgment as to Counts Two (recovery of liquidated damages), Four (recovery of recurring fees), and Six (breach of the guaranty agreement). Defendants opposed (ECF No. 112), and Plaintiff replied (ECF No. 113).

### III.    LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).  In order to meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (citation omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must "exceed[] the 'mere scintilla' threshold . . . ."). An issue is "genuine" if it is supported by evidence, such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV.   DISCUSSION

For the reasons set forth below, the Court finds that Defendants have raised genuine issues of material fact regarding Plaintiff's breach of contract claims. Accordingly, Plaintiff's motion for partial summary judgment as to Counts Two, Four, and Six is denied.

Plaintiff argues that it is entitled to partial summary judgment because it is undisputed that Defendants failed to operate the Travelodge hotel in accordance with their obligations under the franchise agreement. Specifically, Plaintiff contends that the parties entered into a valid agreement, Defendants defaulted on that agreement, and, as a result, Defendants were required to, but did not, pay Plaintiff liquidated damages, outstanding recurring fees, and costs, pursuant to sections 7, 12, and 18 of the agreement. ECF No. 99-5 at 8–9. Stated otherwise, Plaintiff contends that it is undisputed that Defendants breached the contract, and thus summary judgment in Plaintiff's favor is warranted. *Id.*

Defendants do not appear to dispute these facts. ECF No. 99-2, Ex. A ("Kumar Dep.") at 53:10–19, 56:13–14, 65, 68, 82:8–10, 84–87. However, Defendants contest whether their decisions to default on the franchise agreement and to withhold any payment for liquidated damages, recurring fees, or other costs to Plaintiff constitute breach of contract. In asserting there has been no breach, Defendants principally make two arguments. First, Defendants assert that the contract is voidable, and thus no breach occurred, because Plaintiff fraudulently induced them to enter into the franchise agreement. ECF No. 112 at 6–7. Specifically, Defendants argue that Plaintiff's representatives promised orally and via email that Defendants would be able to rebrand the hotel from a Travelodge to anther brand managed by the Wyndham Hotel Group. *Id.* Despite having received this asserted promise, and given Plaintiff's ultimate denial of Defendants' transfer request, Defendants contend that Plaintiff never actually intended for any such transfer to occur. *Id*. Second, Defendants argue they are excused from performing their obligations under the contract because by delaying Defendants' access to the Travelodge reservation system until at least January 2014, despite the parties signing the franchise agreement in October 2013, Plaintiff materially breached the contract. *Id.* at 7-8; ECF No. 112-1 ("Farinella Cert."), Ex. 2. The Court will consider each argument in turn.

Beginning with Defendants' contentions regarding fraudulent inducement, because Defendants support their arguments with evidence extraneous to the written franchise agreement, the Court must first determine whether it can consider this evidence or whether it is barred by the parol evidence rule. Generally, "the parol evidence rule operates to prohibit the introduction of oral promises to alter or vary an integrated written instrument," like the franchise agreement here. *Ocean Cape Hotel Corp. v. Masefield Corp.*, 63 N.J. Super. 369, 378 (App. Div. 1960); *see* Mallet Aff. Ex. A § 17.7.2 ("Neither we nor any person acting on our behalf has made any oral or written

6

representation or promise to you on which you are relying to enter into this Agreement that is not written in this Agreement."). However, the parol evidence rule does not bar "evidence introduced to show that a contract was void or voidable." *Connors v. Fawn Min. Corp*. 30 F.3d 483, 493 (3d Cir. 1994). Thus, despite the presence of an integrated contract like the franchise agreement here, parol evidence is admissible to demonstrate that a party was fraudulently induced to enter into a contract and thus that the contract is voidable. *Travelodge Hotels, Inc. v. Honeysuckle Enter., Inc.*, 357 F. Supp. 2d 788, 795 (D.N.J. 2005). Indeed, courts reviewing similar franchise agreements to the one at issue here have considered parol evidence at summary judgment proffered to show fraudulent inducement. *Id.*; *see also Baymont Franchise Sys. v. SB Hospitality Palm Springs, LLC*, No. 19-cv-6954, 2022 WL 2063623, at *7 (D.N.J. Jun. 8, 2022). Accordingly, the Court will consider evidence extrinsic to the franchise agreement in assessing Defendants' fraudulent inducement defense.

Turning next to the merits of this argument, Defendants assert that they signed the franchise agreement based on a promise from Travelodge representatives that Defendants would be able to convert the hotel from a Travelodge branded facility into a different Wyndham Hotel Group brand. Kumar, Durga's corporate representative, testified in a deposition that when Defendants ultimately took over as Travelodge franchisees, the hotel had a poor local reputation, due to crimes that had occurred there. Kumar Dep. at 28:17–19 ("[I]t was [a] drug infested hotel, there were murders that occurred there[.]"); 50:4-9 ("[T]he police were there if not every day, every other day, checking the guests and getting in the rooms and seeing if there are any drugs in there."). Given this checkered past, when the parties signed the franchise agreement, Defendants understood that the Travelodge hotel was "going to be transferred over to the new brand" (Kumar Dep. at 53:14–15), and that any period of time during which Defendants operated the facility as a Travelodge hotel

was a "stepping stone to get the new flag" (*id*. at 55:24–25). Similarly, Kumar testified that through oral negotiations and emails, Plaintiff represented that Defendants would be given the rights to convert the Travelodge into a Days Inn or a Ramada hotel. *Id.* at 42:11–24; 43:20–21; 66:22–25. Kumar further testified that despite repeatedly promising to execute the transfer, the request was ultimately denied. *Id.* at 43:3–4. Moreover, the parties appear to have entered into an agreement, separate from the franchise agreement, enumerating requirements to change the hotel's brand. Farinella Cert., Ex. 3. Defendants contend this further demonstrates that during negotiations the parties contemplated Defendants' request that they operate a facility branded as something other than a Travelodge. Finally, Kumar testified that had he known that Plaintiff would not authorize a brand transfer, Defendants would have never signed the agreement given the poor reputation and troubled history of the Travelodge hotel Defendants were taking over. Kumar Dep. at 42:25–43:11.

These facts are analogous to those presented in *Baymont*, 2022 WL 2063623, at *7, wherein the court determined that an unrealized promise made by a franchisor to a hotel operator and potential franchisee during contract negotiations created a genuine issue of material fact as to whether the franchisee was fraudulently induced to sign a franchise agreement. There, plaintiff, the franchisor, moved for summary judgment for various breach of contract claims to collect liquidated damages, fees, and costs pursuant to a franchise agreement after defendants, the franchisees, terminated the agreement early. *Id.* at *2. Defendants argued, among other things, that they were not required to pay fees or damages because they were fraudulently induced to enter the contract. *Id*. at *7–*8. Specifically, they testified that during contract negotiations, plaintiff promised defendants they would experience a 40 to 50 percent increase in reservation bookings if they signed the contract. *Id.* at *8. Defendants further testified that this promise was why they decided to enter into the agreement. *Id.* The Court determined that this deposition testimony was

8

sufficient to create an issue of material fact regarding defendants' fraudulent inducement defense. *Id*.

Here, Defendants have provided similar deposition testimony— Kumar testified that Defendants signed the franchise agreement because Plaintiff promised that the Travelodge hotel would be converted into a different Wyndham Hotel Group brand. Beyond Kumar's testimony, Defendants have submitted evidence of an agreement which specifically contemplates how Defendants could change the Travelodge into a different brand. Accordingly, Defendants have shown that a genuine issue of material fact as to the validity of the contract exists through deposition testimony and documentary evidence regarding whether Plaintiff's promise to change hotel brands constituted fraudulent inducement. And where a genuine dispute of fact regarding fraudulent inducement exists, courts in this district have found granting summary judgment on a breach of contract claim inappropriate because, if proven, the contract may be voidable. *Honeysuckle Enter., Inc.*, 357 F. Supp. 2d at 797 ("Summary judgment on . . . the License Agreement cannot be granted to Travelodge if a reasonable fact finder concludes that the Agreement may be voidable.").

Defendants have also raised a genuine issue of material fact regarding Durga's access to Travelodge's reservation system as described in section 4.2 of the franchise agreement, and whether failure by Plaintiff to include Defendants on the system for any amount of time constituted a material breach of the contract such that Defendants should be excused from paying some portion or all of its outstanding recurring fees or damages to Plaintiff. Indeed, Kumar testified that the reservation system malfunctioned over half the time Durga used it, and concluded that there was "something wrong with it." Kumar Dep. at 74:17–23. Moreover, an email from a Durga employee to a representative of Plaintiff indicates that, despite signing the franchise agreement in October

2013, Durga did not have access to the reservation system until the earliest January 2014, suggesting that for at least some portion of the relationship between the parties, Durga did not receive a service to which it was entitled pursuant to the terms of the franchise agreement. Farinella Cert., Ex C. In opposition, Plaintiff contests this evidence, arguing that Defendants in fact had access to the reservation system, and were provided franchisee support when Defendants failed to operate the system correctly. ECF No. 113 at 4. Nevertheless, Plaintiff has not provided evidence or pointed to the record to demonstrate that Defendants have failed to create a genuine issue of material fact. *See Heyman v. Citimortgage, Inc.*, No. 14-cv-1680, 2019 WL 2642655, at *4 n.2 (D.N.J. Jun. 27, 2019) (noting that attorney argument alone is not sufficient to refute evidence presented at summary judgment). And moreover, courts in this district have found that testimony representing that a franchisee was denied access to a reservation system, either completely or due to technical issues inhibiting its use, can be sufficient to put material facts at issue. *See Baymont*, 2022 WL 2063623, at *5; *Honeysuckle Enter., Inc.*, 357 F. Supp. 2d at 797–98. Thus, as the parties disagree regarding Defendants' access to the reservation system here, Defendants have adequately demonstrated that an issue of material fact exists.

In sum, Defendants have raised issues of material fact regarding whether they were fraudulently induced to enter into the contract and whether they were given access to the reservation system for the entirety of the contractual relationship among the parties. These facts bear on the status of the franchise agreement, and Plaintiff's obligations thereunder. As such, Plaintiff's motion for partial summary judgment as to Counts Two, Four, and Six is denied.[2]

---

[2] The Court notes that, in their opposition, Defendants argue summary judgment should be granted in their favor, and thus Plaintiff's Complaint should be dismissed, as they argue Plaintiff has failed to establish a claim for breach of contract or unjust enrichment. *See generally* ECF No. 112. To the extent these arguments constitute a cross-motion for summary judgment, they are procedurally deficient because they are raised in an opposition brief only and are not accompanied

## V.      CONCLUSION

For the reasons stated above, the Court denies Plaintiff's motion for summary judgment. ECF No. 99. An appropriate Order accompanies this Opinion.

DATE: January 19, 2023

s/ Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**

---

by a statement of material fact in violation of local civil rule 56.1(a). *See Pastavalava v. Wolf*, No. 12-cv-9211, 2020 WL 6883433, at *3 (D.N.J. Nov. 24, 2020); *see also Woodland v. Viacom, Inc.*, 569 F. Supp. 2d 83, 85 n.2 (D.D.C. 2008) ("An opposition brief is not the proper vehicle by which to request judgment as a matter of law."). In any event, setting aside any procedural defect, Defendants' arguments still must fail. Here, Defendants move to dismiss claims that rely upon the validity of the franchise agreement. *See* ECF No. 112 8–17. However, as noted above, a genuine issue of material fact exists as to whether the contract between the parties is voidable, and thus, insofar as Defendants have asserted summary judgment claims, they are denied.

11